COLLINS *v.* COVINGTON.

| 84 | 129 |
|----|-----|
| 98 | 369 |

| 84 | 128 |
|----|-----|
| f107 | 666 |
| 109 | 261 |

A trustee who, by leave of the proper court, has converted the trust property into money, but has made no returns nor had any claims for expenditures, compensation, etc. audited and allowed, is not, according to strict law, entitled to withhold from a beneficiary, when the time arrives for settlement, his or her due share of the *corpus* of the fund.

SIMMONS, J., not presiding, because of sickness.

December 13, 1889.

Trusts.   Evidence.   Verdict.   Before Judge NEEL. City court of Cartersville.   June term, 1889.

Rosa Covington, formerly Rosa Collins, and her husband alleged by their petition that about December 30, 1871, certain named vendors conveyed to Mrs. Dorinda

v 84-9

Collins certain realty, in trust for the children of Martin Collins, of whom said Rosa was one, there being six others, one of whom had since died intestate; that on December 18, 1884, Mrs. Collins obtained leave from the judge of the superior court to sell said property at private sale for $1,400, and under this order she did sell it for $1,400 cash, and after receiving that sum, she failed and refused to reinvest it to the same uses, but with five of the other children and heirs of Martin Collins aiding and abetting her, misapplied and appropriated to their own use the trust fund, and refused to account for the share of said Rosa, which is one sixth of said sum, besides interest from December 18, 1884. Mrs. Collins and the five children were made parties defendant, and pleaded not indebted and set-off, reciting the facts hereafter set forth in the evidence offered by them at the trial.

The plaintiffs introduced the petition of Mrs. Collins to the judge of the superior court for leave to sell the land in question as trustee of the children of Martin Collins, setting forth, among other things, that it was greatly to the interest of the *cestuis que trust* that the land be sold, so that its proceeds could be reinvested or put to uses more beneficial to the interest of the beneficiaries, etc., and that the land could be sold to one Vandivere for $1,400 at private sale, which was a full and fair price; wherefore she prayed an order authorizing her to make the sale, and that she might hold the fund arising therefrom subject to reinvestment under order and judgment of the court, or such legal disposition be made of the same as might be to the best interests of said *cestuis que trust*, etc. A guardian *ad litem* was appointed for certain of the children who were minors, who accepted his appointment; and the judge passed an order in conformity to the petition, after service upon the children who were of age and upon the

guardian *ad litem*, all of whom consented that it should be done. Mrs. Covington testified that she had never received any part of what was due on account of the property; that her mother said she sold the land for $1,500, but had to pay out $100 on account of some sort of compromise of a claim to a part of the land. She was at work all the time she was at home; got but little schooling; was sixteen years old when she married. One of her brothers died February 10, 1886, leaving no heirs except his brothers and herself. She was about three years old when her father died. Her husband testified corroborating her, and as to certain mules which defendants had and which Mrs. Collins claims; that he never heard them say where they got the money to pay for them; and that certain land "out at the branch" was worth $125 a year for rent.

For the defendants, Mrs. Collins testified that her husband died June 28, 1871, leaving six minor sons, and Rosa, aged two years and eight months, (Mrs. Covington.) One of the sons died February 10, 1886. After she had finished paying for the land, acting under the advice of her husband's brother, Aaron Collins, she had a deed made to herself as trustee for her children. In 1880, she sold the land for $1,400 to Vandivere for part cash and the balance in notes. Before paying the balance, Vandivere became dissatisfied, and at his request, in 1884, she procured an order for sale of the land, but this was done in pursuance of the original sale and to perfect titles. There was pending a suit for part of the land, to compromise which she paid $124 of the money received of Vandivere. When Rosa was married, she gave her $35 of said money; has $550 of the money loaned out at 8 per cent. interest; and that is all she has except a little interest which she may have in her pocket. From the testimony of other witnesses for the defendants it appeared that the land was worth about

$600 when Martin Collins died and when the trust deed was made; that $15 costs and attorneys' fees were paid in procuring an order for the sale; that one of the sons received $90 of the trust money and paid it out for a pair of mules, but had nothing further to do with the money, and none of his brothers ever had anything to do with it.

The jury found for the plaintiffs $145.14 principal, with interest, against Mrs. Collins, who moved for a new trial on the following grounds:

(1) Verdict contrary to law, justice and equity.

(2) Error in refusing to allow Dorinda, Aaron and J. C. Collins to testify as follows: The estate of Martin Collins consisted of personal property worth about $300. He owned no real estate, but had bond for titles to the land mentioned in the declaration, for which he had agreed to pay $630, and of this amount had paid only half; and after his death, Mrs. Collins, by the assistance of those of her sons, defendants in this case, who were old enough to work, paid the balance of said purchase money, and had the deed made to herself as trustee for her children, as set out in the declaration; and she also paid a doctor's bill of $140 due by Martin Collins, and placed a tombstone over his grave worth $25. No year's support was set apart out of the estate of her said husband.

(3) Error in ruling out and withdrawing, over objections, the testimony of said witnesses as follows: Mrs. Collins had no property of her own out of which to support and educate her children; but by her own labor and that of her sons who were large enough to work, she did support and educate them as best she could. Rosa Covington was of but little or no service to her till she was ten years old, and up to that time it was worth at least $50 per annum to board, clothe and educate her; and from then until her marriage it was worth at least

$25 per annum over and above her services.  During the years 1872–73, there being no suitable improvements on the land, Mrs. Collins built thereon a frame dwelling-house worth about $150 ; and stables and barns worth about $125 ; cleared and fenced about twenty acres of the land at a cost of about $60 ; and dug a well worth $10; and otherwise improved the land, which was worth about $600 before improvements were made. In 1882 or 1883, James C. Collins rented a farm for Mrs. Collins and all of her children for $450, and owing to dry weather the crops on it were very short and lacked of paying the rent $300, which was paid out of the money arising from the sale of the land in question. In 1884, when Rosa married, Mrs. Collins furnished her with a bedstead, bed and bedding worth $15, for which no charge was made ; Mrs. Collins thinking at the time that she would never be sued by any of her children, and that all she was required to do was to raise them. It was worth $50 per annum to look after and take care of the trust estate.

The motion was overruled, and Mrs. Collins excepted.

A. W. Fite, Graham & Attaway and A. S. Johnson, for plaintiff in error.

Baker & Heyward, *contra*.

Bleckley, Chief Justice.

It does not appear that Mrs. Collins ever made any return to the ordinary as trustee for her children, or that she ever had any of her claims for expenditures, compensation, etc. audited and allowed.  According to the strict law applicable to her character and position as trustee, the verdict of the jury in behalf of her daughter, Mrs. Covington, seems to have been warranted.  The recovery was for one share in the *corpus* of the trust fund and interest thereon for four years and a half, that

is, from the time when the land was converted into money under an order from the chancellor up to the time of trial. At the time of conversion, Mrs. Covington was already married and, we may suppose, had ceased to be a member of her mother's family, or to share in the use of the fund for the family's benefit.

We think there was no error in overruling the motion for a new trial.        *Judgment affirmed.*